of the contract. Such testimony, upon the objection of the plaintiff, was excluded. The court announced the correct measure of damages,—that the plaintiff was entitled to recover the difference between the contract price and the actual cost of manufacturing and delivering the goods for which the contract provided. Masterton v. Mayor, etc., 7 Hill, 61, 42 Am. Dec. 38.

For these reasons we think the judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.

(69 App. Div. 63.)

AUCHINCLOSS v. METROPOLITAN ELEVATED RY. CO. et al.

(Supreme Court, Appellate Division, First Department. February 7, 1902.)

1. STREET RAILROADS—CONSTRUCTION — DAMAGE TO ABUTTING PROPERTY—EASEMENTS IN STREET—BENEFITS AND BURDENS—INJUNCTION.

Where it appeared that the construction and operation by defendant elevated railway company, which already had two tracks past plaintiff's property, of a third track, would impair plaintiff's easement of light, air, and access to the street, and impose burdens additional to those already imposed, plaintiff was entitled to restrain the construction and operation of such third track until defendant acquired plaintiff's easement by making sufficient compensation for its impairment.

2. SAME—BENEFITS—SUFFICIENCY OF EVIDENCE.

In an action to restrain an elevated street railway company, which already had two tracks past plaintiff's property, from constructing and operating a third, it appeared that most of the trains run upon such third track passed plaintiff's property at great speed, and did not stop near enough thereto to furnish any accommodation to the people in that section, and that the few trains that did stop near the property were always too crowded to furnish accommodation. Held, that the third track did not confer any benefit upon plaintiff's property sufficient to justify the obstruction of plaintiff's light and air by such third track.

3. SAME—CONSTRUCTION OF NEW TRACKS—BENEFITS CONFERRED BY OLD TRACKS.

The benefit that such road, without the third track, conferred upon the locality in which plaintiff's property was situated by reason of the means afforded for transportation from other parts of the city, would not authorize defendant to extend its structure for the benefit of people residing in other localities without acquiring the right to plaintiff's property in the street at this locality.

4. SAME—JURISDICTION—DAMAGES—PAYMENT OF COMPENSATION—WITHHOLDING INJUNCTION.

As when the action was commenced plaintiff was entitled to an injunction, the court had jurisdiction to give him such damages as were caused by the illegal structure, and to require payment by defendants of the value of plaintiff's property in the street appropriated by them as a condition for withholding the injunction.

5. SAME—NEW YORK ELEVATED RAILROAD COMPANY—AUTHORITY TO CONSTRUCT NEW TRACKS.

Act 1867, p. 489, § 4, authorized the P. Co. to extend its elevated railway along both sides of Ninth avenue. Act 1875, c. 595, § 1, conferred upon the E. R. Co., which had purchased P. franchises, the rights and franchises so purchased. Section 3 provided for the continuation of a commission created by the act of 1867. Section 4 empowered the E. Co. to make such alterations in its railroad structure as should be authorized by the commission, and provided that the location of lines or routes not specifically located by law which the E. Co. was or might be authorized by law to construct, might be such as the company might

adopt and the commissioners approve. Section 5 provided that the particular location, number of tracks, etc., might be such as the commissioners should approve, and that the E. Co. might locate its tracks along both sides of Ninth street. *Held*, that the act of 1875 did not give or attempt to give the E. Co. the right to lay down a third track along Ninth street, since the power given it to locate and construct tracks was limited to such structure and tracks as it was or might be authorized by law to construct.

6. SAME—TRANSFER OF FRANCHISES—CONSTITUTIONAL LIMITATION.
So far as the act of 1875 conferred upon the E. Co. the rights and franchises held by the P. Co., it was not in violation of Const. 1875, art. 3, § 18, which prohibits the legislature from passing a private or local bill granting to any corporation the right to lay down railroad tracks, or any exclusive franchise.

7. SAME—LAYING DOWN NEW TRACKS—CONSTITUTIONAL LIMITATIONS.
So far as the act of 1875, if it should be so construed, granted or attempted to grant any authority to lay down tracks in addition to those authorized by the charter of the P. Co., it was invalid, as in violation of Const. 1875, art. 3, § 18.

8. SAME—RAILROAD COMMISSIONERS—AUTHORITY—TERMINATION.
The authority conferred upon the commissioners by the act of 1875, being substantially a continuation of the authority conferred upon them by the act of 1867, which, as shown by section 5, prescribing their powers, was confined to the construction of the railroad, was not a continuing authority, and hence ceased when the road was completed as provided for in the act giving it its powers.

9. SAME—CONSTRUCTION—STATUTORY TIME LIMIT.
Section 2, Act 1875, having limited the time in which the E. Co. was authorized to build its railroad to five years from the passage of the act, any construction of that road, either with or without the approval of the commissioners, after the expiration of the specified time, would be unauthorized.

O'Brien, J., dissenting in part.

Appeal from special term, New York county.

Action by Henry B. Auchincloss against the Metropolitan Elevated Railway Company and others. From a judgment dismissing plaintiff's complaint (60 N. Y. Supp. 792), he appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

J. Aspinwall Hodge, Jr., for appellant.
Julien T. Davies, for respondents.

INGRAHAM, J. This action was brought to restrain the defendants from operating an elevated railroad in 9th or Columbus avenue, between 78th and 79th streets, in the city of New York. Two causes of action are set out in the complaint,—the first, to restrain the operation of the elevated railroad as it existed at the time of the commencement of the action, namely, December 22, 1891: and the second, to restrain the defendants from constructing upon the elevated railroad structure what is called a "third track," which was then in course of construction. The learned trial judge dismissed the complaint. The decision upon which the judgment was entered was a short decision under section 1022 of the Code of Civil Procedure. The court found that the plaintiff had failed to prove that he had in the past suffered or is now suffering any substantial loss or damage by reason of the construction, main-

tenance, and operation of the defendants' road, or any part thereof, in front of and adjacent to the plaintiff's premises, and therefore dismissed the complaint. This decision, as I understand it, was based upon the operation of the railroad as a whole, including the operation of the third track, the construction of which had been commenced in December, 1891, prior to the commencement of this action and completed in January, 1892, when trains began running upon it. This middle or third track extends from 14th street to 114th street on 9th or Columbus avenue, and is used for express trains. The station north of 78th street at which these express trains stop is 116th street, and the station below 78th street at which these trains stop is 59th street. There were seven or eight express trains during the day that stop at 81st street. The evidence is substantially undisputed (it certainly predominates) that the construction of this third track and the operation upon it of express trains seriously increased the burden to the plaintiff's property; and, as the second cause of action was for the purpose of enjoining the construction and operation of this third track, it would seem that the plaintiff was entitled to such an injunction, assuming that the defendants had legislative authority to construct that track, unless the plaintiff was paid a sum of money which would compensate him for the impairment of his easement in the street caused by the construction of such third track. If the construction of the third track in December, 1891, and January, 1892, assuming it to have been authorized by the legislature, did, as a fact, impair the plaintiff's easement of light, air, and access in the street, and impose upon the plaintiff's property additional burdens to that imposed by the construction and operation of the road as originally constructed, it would appear that the plaintiff was entitled to an injunction restraining the construction and operation of that track until the defendants had acquired the plaintiff's interest in the street which was appropriated or used by its construction and the operation of trains thereon. It is apparent that this third track could be of no possible benefit to the plaintiff's property. The trains that were run upon it carried passengers from below 59th street to 116th street and above. Trains were run past the plaintiff's premises at great speed, and the few express trains that stopped at 81st street were so crowded that they furnished no accommodation to people in this section of the city. It could be of no benefit to the plaintiff's property to run express trains past it at a high rate of speed, increasing the obstruction of light and air, for the benefit of persons living above 116th street; and the right that the defendants acquired to maintain and operate this railroad existed prior to December, 1891, and the benefit that such road, without the third track, conferred upon the property in this locality by reasons of the means afforded for transportation from the lower part of the city would not authorize the defendants to extend its structure for the benefit of those residing above 116th street, until it had acquired the right to the plaintiff's property in the street at this locality. When the plaintiff commenced this action this third track was in course of construction, and the plaintiff then asked for an injunc-

tion restraining the defendants from constructing or operating it. Notwithstanding the pendency of this action, with notice to the defendants that the plaintiff challenged their right to construct the third track, the defendants went on and constructed it, relying upon their legal right so to do without obtaining the plaintiff's consent or condemning his interest in the street; and, the further appropriation of plaintiff's property in the street without his consent being illegal, he was entitled to an injunction to restrain the construction or maintenance of the third track. When the action was commenced, plaintiff being entitled to equitable relief, the court had jurisdiction to give him such damages as were caused by the illegal structure, and to require the payment by the defendants of the value of the plaintiff's property in the street appropriated by them in the construction of this third track as a condition for withholding the injunction. Van Allen v. Railroad Co., 144 N. Y. 174, 38 N. E. 997. This would require a reversal of this judgment.

The question as to the legislative authority of the defendants to construct this third track on the Ninth Avenue Railroad is presented, and, as it is of considerable importance, both to the defendants and to the property owners in this locality, and has been fully argued and carefully considered, we think it advisable to here determine it. This question was presented at the special term of the supreme court in 1894 upon a motion for an injunction in the case of the mayor of New York against these defendants to restrain the construction of this third track. 25 N. Y. Supp. 860. The question presented upon the argument of that motion was whether the action of the commissioners appointed under sections 3 and 4 of chapter 595 of the Laws of 1875 gave the defendants authority to construct this track, and the decision of that question depended upon whether the commissioners were authorized to grant the application made by the defendants for additional tracks after the road as contemplated by the act was completed; and whether the act of 1875 was repealed by the rapid transit act of 1891. It was held that the authority given to the commissioners appointed under the act of 1875 would apply to any extensions or alterations in the structure of the Ninth avenue road after the road was completed as provided for in the plans first approved by the commissioners under that act. The limitation of the legislative power by the amendment of the constitution which took effect on the 1st of January, 1875, was not called to the attention of the court, and was not considered. The validity of the act of 1875 is challenged upon this appeal, as in violation of section 18 of article 3 of the constitution, whereby it is provided that the legislature should not pass a private or local bill "granting to any corporation, association or individual the right to lay down railroad tracks"; and it is claimed that the act of 1875, if, as assumed, it gave to these defendants the right to lay down railroad tracks on Ninth avenue, in the city of New York, was void under this provision of the constitution. The history of the legislation which gave to the New York Elevated Railroad Company authority to construct its railway was reviewed by Judge Earl in Re New York Elevated R. Co., 70 N. Y. 327, and

chapter 595 of the Laws of 1875 was there examined. As to the act of 1875, Judge Earl says:

"The effect of this act was to secure to the elevated railroad company all the rights, powers, privileges, and franchises of the West Side & Yonkers Patent Railroad Company under the purchase by and transfer to it, and also the right to use any motive power for the propulsion of its cars which the commissioners would authorize or approve. This act did not confer any new franchises upon the elevated railroad company. It only confirmed in it and regulated the franchises previously possessed by the other company. It did not give any new authority to lay down railroad tracks, or grant any exclusive privilege. It only confirmed and regulated authority and privileges previously granted to a company to which the elevated railroad company had succeeded. * * * I can therefore perceive no constitutional objection against the act of 1875. It did not violate section 18 of article 3 of the constitution, which took effect January 1, 1875, and which prohibits the legislature from passing a private or local bill, among other things granting to any corporation the right to lay down railroad tracks or any exclusive privilege or franchise. These constitutional provisions do not prohibit a private or local bill to amend the charter of private corporations by regulating powers, rights, privileges, and franchises which it previously possessed. Such a bill may not be passed to give to an existing corporation any new right to lay down railroad tracks, or any new exclusive privileges or franchises; but it may be passed to regulate and control the right to lay down tracks previously existing, or to give new privileges or franchises, provided they be not exclusive."

I suppose it must be conceded from this statement in the opinion that the constitutionality of this act was upheld solely because it did not grant to the defendants a new right to lay tracks; for it seems to have been conceded that the legislature could not, by a private or local bill, authorize an existing railroad company to lay down new tracks, any more than it could confer such an authority upon a corporation when incorporated; and the effect of this decision, I think, is to be limited to the proposition that this act of 1875, so far as it simply vested in the New York Elevated Railroad Company a franchise that had been granted to the West Side & Yonkers Patent Railroad Company, and regulated the use of that franchise, was a valid exercise of legislative power, and was not within the prohibition of section 18 of article 3 of the constitution.

In Railroad Co. v. Kobbe, 70 N. Y. 361, in discussing the effect of this provision of the constitution upon the power of the legislature, Chief Justice Church says:

"The constitutional clause was designed, I think, to prohibit an original and independent grant of the right to lay down railroad tracks, including the powers incident thereto. I agree with the objectors that the legislature cannot grant this right under the guise of an amendment to an existing charter any more than by an original grant. It would be incompetent to grant this right to a corporation organized for a different purpose; but, in my judgment, an act restricting and regulating an existing right to lay down railroad tracks is not a grant of that right within the meaning of this clause. It is not within the letter of the clause, nor within the evil at which the provision was aimed."

See, also, opinion of Judge Gray in Astor v. Railway Co., 113 N. Y. 111, 20 N. E. 594, 2 L. R. A. 789.

In view of these decisions, it must, I think, be deemed settled that, so far as this act of 1875 attempts to grant to the New York Elevated Railroad Company any authority to lay down tracks in addi-

tion to those authorized by the charter of the West Side & Yonkers Patent Railroad Company, it is in violation of this provision of the constitution, and void; but so far as this act of 1875 confers upon the New York Elevated Railroad Company franchises and rights secured to the West Side & Yonkers Patent Railway Company, and regulates the use of that franchise, it is not in violation of any constitutional provision, and is a valid exercise of the legislative power.

We have to construe the act of 1875 in view of this constitutional prohibition thus construed by the court of appeals. Section 1 of the act recites that the New York Elevated Railroad Company was organized, incorporated, and existing under the general railroad law, and, in addition thereto, had acquired by purchase under mortgage foreclosure and sale and other transfer all the rights, powers, privileges, and franchises which were conferred upon the West Side & Yonkers Patent Railway Company by various acts of the legislature specified. Section 2 provides that the said New York Elevated Railroad Company "is hereby authorized and required to construct and complete at least one track, with turnouts and side tracks, of its elevated railroads, at any time within five years after the passage of this act, * * * along and over the streets and places specified and permitted in the aforementioned acts, in the mode, manner and form prescribed by said acts, except as herein otherwise provided." Section 3 provides for the continuation of the commission provided for by the act of 1867 to incorporate the West Side & Yonkers Patent Railway Company, and provision is made for filling vacancies therein. Section 4 provides that:

"The said New York Elevated Railroad Company may make and adopt such alterations and improvements in the structure, rolling-stock, motor power and its application, and in the position, grade, elevation and depression of the tracks, and the mode of securing and strengthening its said railroads, sideways, crossings, stations and turnouts, as the said commissioners, or a majority of them, may authorize or approve. * * * And the location of the lines or routes not specifically located by law, and the position and construction of the tracks, side-tracks, turn-outs, stations and other structures which said company is or may be authorized by law to construct, may be such as said company may adopt and the said commissioners approve."

Section 5 provides that:

"In and through that section of the city of New York, where, and by the provisions of section four of the aforesaid act [chapter 489 of the Laws of 1867], the said railroad is authorized to locate its roadways and tracks, stations, turnouts and crossings 'along Ninth avenue or streets west thereof,' the particular location, form and structure, and number of tracks and grades, elevations and depressions thereof, may be such as the commissioners aforesaid, or a majority of them, shall designate and approve."

The other provisions of the act are not material.

Turning to chapter 489 of the Laws of 1867, which contained the grant to the franchise to the West Side & Yonkers Patent Railroad Company, we find that section 4 provides that upon the compliance of the West Side & Yonkers Patent Railway Company as required by the preceding section of the act, and upon the filing of the certificate of the commissioners, approved as aforesaid, in proof of the

same, "the said company is hereby authorized to extend its line of elevated [so called] railway as aforesaid along both sides of Greenwich street to Ninth avenue, and along both sides of Ninth avenue, or streets west of Ninth avenue, to the Harlem river." There is no provision in this act of 1867 which authorizes the construction or maintenance of a 'third track, or the appropriation or occupation of any portion of the street, except so far as was necessary to construct two tracks, one upon each side of the street, and the turnouts and connecting tracks between the two tracks, · authorized by section 5, and a space necessary for the construction of stationary engines which were to furnish the motive power of the road. Certainly, under the authority here conferred, the construction of a third track in the street would be unauthorized. We have; therefore, an act by which a railroad company is authorized to erect in certain streets in the city of New York a track upon each side of the street, limiting the right of the company to the erection of two tracks, with no authority to construct in the street a third track. We have a subsequent act, which conferred upon another railroad company, who had acquired by purchase the rights and franchises of the first company, the rights and franchises then acquired; empowered the second railroad company to make such alterations in its railroad structure as should be authorized by certain commissioners whose appointment was provided for; permitted such a change of the rolling stock, the motive power, and its application, as the commissioners, or a majority of them, should authorize; and provided that the location of the lines or routes not specifically located by law, and the position and construction of the tracks, side tracks, turnouts, stations, and other structures which said company is or may be authorized by law to construct, may be such as said company may adopt and the said commissioners approve; with a further provision that the particular location, form, and structure and number of tracks and grades, elevations, and depressions thereof may be such as the commissioners, or a majority of them, should designate and approve. We have a construction of this statute by the court of appeals, which upholds its constitutionality upon the ground that the act gives or attempts to give no authority to lay down additional tracks, and which a careful consideration of the provisions of the act confirms. By section 4 of the act of 1875 the location of the lines or routes not specifically located by law, and the position and construction of the tracks, side tracks, turnouts, stations, and other structures which the said company "is or may be authorized by law to construct, may be such as said company may adopt and the said commissioners approve." This plainly limits the power granted in making the plans and in the construction of the tracks to such tracks and structure as the company "is or may be authorized by law to construct." This company was authorized by law to construct two tracks in Ninth avenue, one upon each side of the avenue, and that was all that it was authorized to construct. Section 5 of the act of 1875, whereby the commissioners were authorized to designate and approve the number of tracks of the railway, was not intended to permit the con-

struction of tracks in addition to those which the company was then authorized to construct, but to have it determined by the commissioners whether there should be one or two tracks upon Ninth avenue. It must be remembered that when this act was passed elevated railroads were an experiment, the only road constructed being a small portion of a road up Greenwich street, in the city of New York, which consisted of a single track upon one side of the street. This road the New York Elevated Railroad Company had acquired, and it was this road that the company contemplated extending to the Harlem river. The company was authorized to construct two tracks. The experimental portion that they constructed, however, was composed of but one track. It certainly could not have been intended that this general grant of power would authorize this company to construct in Ninth avenue, or the avenues west of it, such a number of tracks as they at any subsequent time should wish and should obtain the consent of these commissioners to construct. Nothing indicates that such an appropriation of several avenues to the exclusive use of this corporation, limited only by the consent of these commissioners, was contemplated. If there was any such intention, however, it would seem that it would have been in violation of this constitutional provision to which attention has been called as authorizing an existing railroad to lay down additional tracks, or tracks in addition to those it was authorized by law to construct and operate. The court of appeals have expressly adjudged that the authority conferred by this act gave no right to lay down additional tracks, and that the act was constitutional, because no such authority was contained in it. If the court, in its construction of the act, had overlooked the provisions of section 5, to which attention has been called, and if this provision is broad enough to authorize the construction by the elevated railroad company of additional tracks in Ninth avenue (and if it is broad enough to authorize the construction of one additional track in this avenue it is broad enough to authorize any number of additional tracks approved by these commissioners), then the provisions authorizing the construction of additional tracks would be in violation of this constitutional provision. I can see no escape, therefore, from the position that the construction of this additional track in Ninth avenue opposite the plaintiff's premises was unauthorized, and that the plaintiff was entitled to an injunction restraining the defendants from the maintenance and operation of this track.

My associates are also of the opinion that the authority conferred by the act of 1875 upon these commissioners was not a continuing authority, but was intended to provide for the construction of the road to the Harlem river, and that when the road was so constructed and completed the authority of the commissioners to consent to additions to the road terminated. The commissioners were originally appointed under chapter 489 of the Laws of 1867. Section 5 of that act provided that there should be three commissioners, who should have power, in case of the extension of the line of railway as specified, to authorize the constructing company to remove any obstructions which might exist along its route. The commissioners were

also authorized to designate the points at which staircases might be erected for public access, and where turnouts and connecting tracks between the two tracks along the route of the street might be erected. They also had power to limit the speed at which the trains could be operated, and to prohibit the erection of any structure in the streets which should be unsafe or unauthorized by the act. The authority thus conferred upon the commissioners would seem to be limited to the construction of the railroad, and it would seem to be quite clear that under this act their power would end when the road was finally constructed and in operation. After they had authorized the company to remove any obstructions that existed along the route, and the removal and replacement of awnings and signs, and had designated the points at which staircases were to be erected in the streets for public access to such railway, and where turnouts and connecting tracks between the two tracks along the route of the street may be erected, and limited the speed to a maximum rate comportable with public safety, at which the cars might be propelled upon the said railway, they had no further duties to perform. There was nothing in this act which contemplated an extension of the road after the structure authorized was completed. These commissioners were continued by section 3 of the act of 1875, but the authority conferred upon them by that act was of substantially the same character as that conferred by the act of 1867. They were given power to approve of the structure, the motive power, rolling stock, and its appliances, and the location of the lines or routes not specifically located by law, and also as to the particular structure, the number of tracks and grades and elevations and depressions thereof applicable to the building of the road. But when the road was once built according to the plans proposed by the company, and approved by the commissioners, it would seem that the duties that they were to perform were terminated, and that there was no reason for their continued existence. There is certainly nothing in this act which contemplates any extension of the road or the building of additional tracks which should be required in the future. The railroad company was required to construct the road which it was authorized to build within five years after the passage of the act, and any construction of that road, either with or without the approval of the commissioners, after the five years had expired, would seem to be unauthorized.

There are many exceptions to rulings on evidence relied on by the plaintiff, which we are not now required to discuss. We think, however, that some of the evidence excluded was competent as showing what conveniences were afforded to the plaintiff by the defendants' railroad, so that the court could determine whether, as a whole, in view of the other means of transportation available, the benefits received by plaintiff's property exceeded the burdens imposed upon it. The questions may not arise on a new trial, but we do not wish to be understood as concurring with the trial judge in all his rulings on the admissibility of evidence.

It follows that the judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and McLAUGHLIN and HATCH, JJ., concur.

O'BRIEN, J. (concurring). I concur in the conclusion reached in this case for the reason that the third track, although constructed in December, 1891, was not authorized by the commission until January, 1894, and it imposed an additional burden upon the plaintiff's property during that period, for which he was entitled to damages. I do not, however, concur in the view that sections 3, 4, and 5 of chapter 595 of the Laws of 1875, under the authority of which the defendants maintain the third track, are unconstitutional. That these sections confer authority to lay down tracks in addition to those provided by the charter of the West Side & Yonkers Patent Railroad Company was expressly held in Mayor, etc., of City of New York v. Manhattan Ry. Co. (Sup.) 25 N. Y. Supp. 860. Therein it was shown that it was provided by section 5 that:

"The said railroad company is authorized to locate its * * * tracks * * * along Ninth avenue. * * * The particular location * * * and number of tracks * * * may be such as the commissioners aforesaid, or the majority of them, shall designate and approve."

And it was said by Justice Ingraham, writing the opinion:

"Considering all the provisions of this act [chapter 595, Laws 1875], I think it must be held that this authority vested in these commissioners was a continuing authority, and that they had power to designate and approve of any proposed modification or addition to this elevated structure in Ninth avenue."

In view of the public utility of the third track, and the fact that 10 years have elapsed during which it has existed and benefited those using the railroad, it does not seem to me that any useful purpose could be served—particularly where all the damages that the plaintiff has suffered may be fixed and awarded—to give what I regard as a forced construction to the constitutional provision which prevents the legislature from passing a private or local bill granting to any corporation the right to lay down railroad tracks, and thus extend the provision to a case like this, where the advantage resulting to the plaintiff from the removal of the third track would be small, and could be recovered in an action at law, and where serious and lasting injury would be thereby inflicted, not only upon the railroad, but more especially upon the traveling public.