She could not, knowing a dangerous defect, continue to live in the apartments, and hold the landlord as for a tort when the dangerous condition resulted in an injury, and the mere fact that she had elected to bring some of her work as janitress into her own rooms for performance could not change the relation. There is no evidence that the defendant had failed to furnish a reasonably safe place in which this work was to be performed, or in which it might be performed. He did not furnish the plaintiff's kitchen for that purpose, for the evidence is that she rented and had possession of the four rooms upon the second floor, and as the master did not furnish the place where the accident occurred, he cannot be held liable for negligence in failing to have the plaintiff's kitchen in repair.

The judgment and order appealed from should be affirmed, with costs. All concur.

---

(109 App. Div. 802)

### KNOTH v. MANHATTAN RY. CO.

(Supreme Court, Appellate Division, First Department. December 22, 1905.)

STREET RAILROADS—ELEVATED ROADS—ADDITIONAL USE OF STREET—RIGHTS OF PROPERTY OWNER—INJUNCTION—DAMAGES.

Where plaintiff, who had been the owner of property abutting a street in New York in which defendant's elevated railway was constructed, made no objection for 10 years to defendant's construction of a third track on which to operate express trains, which, though constructed without right, was built in good faith and under color of legislative authority, the court, in a subsequent suit by plaintiff to restrain the maintenance of such track as an unlawful interference with plaintiff's easement of light and air, had power to refuse an injunction on condition that defendant pay damages for the injuries sustained, though defendant had no power to condemn plaintiff's easements; the damage to defendant and to the public, caused by the removal of the track, being greatly in excess of the damage accruing to plaintiff by continuance thereof.

Appeal from Special Term, New York County.

Action by Elizabeth Knoth against the Manhattan Railway Company. From that part of a judgment, in an action for an injunction and damages against defendant, which denied the injunction in case damages were paid, plaintiff appeals. Affirmed.

The facts found by the trial court, and which are important in the consideration of the questions of law involved, are that the defendant, a domestic corporation, operates a railway in front of the plaintiff's premises under rights acquired from its predecessor, the New York Elevated Railway Company, secured by a lease made by the last-named company in the year 1879; that Ninth avenue is a public highway and thoroughfare; that the plaintiff became the purchaser of 461 Ninth avenue, between Thirty-Fifth and Thirty-Sixth streets, in 1889, and since that time has been the owner in fee and in possession thereof; that the defendant constructed a center or third track partly in front of plaintiff's premises, which track has been operated by the defendant since the year 1894 by running express trains thereon carrying passengers; that the track and the structure supporting it are permanent, and the defendant intends indefinitely to continue the operation of trains theron; that this track was constructed, maintained, and operated without the consent of the plaintiff; that the express trains operated thereon do not stop anywhere within a mile of the plaintiff's premises; that no benefit is conferred on such premises by reason of the third track and the trains oper-

ated thereon; that prior to the construction and operation of such track there was an open space in front of plaintiff's premises, between two existing tracks, about 18 feet wide and extending on a line parallel to and along said avenue, and through this open space light and air passed to the surface of the avenue beneath the structure; that the third track, with the structure supporting it, is of so extensive and substantial a character as to almost close the said space, and by its maintenance and the operation of trains thereon the injurious effects of the railway upon abutting premises, including these of the plaintiff, are substantially increased; that the erection and operation of the third track involve a further taking of plaintiff's easements, and trains operated on it run past the plaintiff's premises at great speed, and increase the obstruction of light and air to such premises, and the trains make a loud and disagreeable noise, and cause dust and cinders to be thrown into and upon said premises; that by the erection and operation of the center or third track in front of the premises actual and substantial diminution in the rental value and in the fee value has been caused; that, among the rights, privileges, and franchises granted to the New York Elevated Railway Company, was that of making alterations and improvements in the structure, rolling stock, motor power, and its application, and in the position, grade, elevation, and depression of the tracks, and the mode of securing and strengthening its railroads, sideways, crossings, stations, and turn-outs as might be authorized and approved by commissioners appointed pursuant to chapter 489, p. 1271, of the Laws of 1867; that on November 10, 1877, the commissioners approved a plan of proposed additional tracks of the New York Elevated Railway Company, which plan provided for four tracks in front of the plaintiff's premises, one of which was a switch, cross-over, or connecting track, and three of said tracks were actually constructed and used prior to the year 1890. There is a finding with reference to various changes of tracks in front of the plaintiff's premises, but they are not material, except that it is found that by reason of these changes no right was given to build this third track. It is, however, found that in the month of July, 1894, the switch, siding, or third track was constructed over a portion of Ninth avenue in front of the premises in question, in addition to the structure as it existed prior thereto, the construction of which switch, siding, or track had been, in the month of December, 1893, duly authorized by the commissioners before mentioned, in so far as they had power so to do, and was constructed under color of such authority; that the plaintiff had knowledge of the fact that said switch, siding, or third track was being constructed, and has, ever since its construction, been familiar with its use and effect. It is then found that the defendant has spent over $800,000 in acquiring the easements of abutting owners along the line of said third track, turn-out, or siding, which constitutes a great public benefit; that the injury, if any, suffered by the plaintiff from the maintenance and operation of said switch, turn-out, siding, or third track, is small compared with the injury and inconvenience which would result to the defendant and to the public if the defendant should be compelled to discontinue the use of and remove the same; that, if the third track were removed, the defendant's train service would be seriously impaired, and its ability to perform the purposes of a rapid transit railway would thereby be greatly lessened, and the danger incident to the operation of trains would be increased. It is then found, that for any and all damages suffered by the plaintiff by reason of the construction, maintenance, and operation of the third track, the plaintiff can be adequately compensated by the payment of such sum of money as shall be found by the court to be the amount of damages so suffered, and that the payment to the plaintiff of just compensation would be a remedy for her injuries as adequate as would be the removal of the switch, turn-out, or so-called "third track" in front of her premises.

The court then found, as matter of law, that by the construction of the third track the defendant took some portion of the easements of light, air, and access from the plaintiff's premises; that the defendant did not have authority to construct or operate trains upon that track, and that the defendant has no right to condemn the easements taken for the construction and operation of the center or third track; that the plaintiff is not entitled to injunctive relief, unless she proved that the maintenance and operation of the defend-

ant's railway has resulted in pecuniary damage; that the plaintiff is entitled to a judgment against the defendant for the amount of damage sustained by her in consequence of the diminution of rental value of her premises, and that she is entitled to an injunction restraining the defendant from maintaining or operating or using the third track, unless the defendant pay her, within 60 days from the entry of the judgment, the sum of $1,200, the value of her property, used and appropriated by it in the construction and operation of the third track, and that the injunction should not be operative for a period of 60 days from the time of the entry of the same; that the judgment should provide that the plaintiff, on payment of the $1,200, make conveyance of the easements taken by the construction and operation of the third track, and also procure releases of all persons having an interest in, or lien upon, the premises of so much of the easements as were thus taken. Judgment was entered accordingly.

The plaintiff does not appeal from the whole judgment, but from that part of it only which provides as follows: "Ordered, adjudged, and decreed that in case the defendant shall, within 60 days after the service of a copy of this judgment, deliver to the plaintiff or her attorney a written offer to pay to the plaintiff the sum of $1.200, with interest from the date of the trial hereof, to wit, December 16, 1903, then upon the plaintiff's tender to the defendant of a duly executed conveyance or grant of so much of the property of the plaintiff in Ninth avenue in front of No. 461, and of the easements appurtenant thereto, as has been taken and appropriated by the defendant for the purpose of its said center or third track, with the release of the lien of all mortgages upon such property granted, and all other incumbrances thereon, and if said defendant pay said sum of $1,200, with interest, to the plaintiff therefor, on the delivery thereof, or if said plaintiff omits or refuses to accept said offer, or to deliver said conveyances executed as aforesaid with such discharge or release, within said time, then, and in either of said events, the said injunction shall not be operative, so far as it affects the maintenance and operation of the said center or third track at said locality, until 10 days after the plaintiff may thereafter deliver or tender for delivery such conveyance or grant, and release from lien of the mortgages aforesaid. And if, during said 10 days, the defendant pays said sum for said conveyance, said injunction shall remain wholly inoperative. And it is further ordered that the payments and tenders herein provided for shall be made to and by the attorneys for the respective parties herein."

Argued before O'BRIEN, P. J., and PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

J. A. Hodge, for appellant.
Julien T. Davies, for respondent.

PATTERSON, J.   This is, in form, an action brought by an abutting property owner against the Manhattan Railway Company for an injunction and damages for taking easements of light, air, and access by the erection and maintenance, without legislative authority, of an elevated railroad track over and above the center of Ninth avenue, between two other elevated tracks previously erected and rightfully operated and maintained by the defendant and its predecessors, in front of the plaintiff's premises.   Unfortunately we have not before us the record of the evidence given at the trial.   The case comes up on the judgment roll alone, and we can only look, therefore, to the pleadings and findings of fact to ascertain what induced the conclusions of law reached by the court below.   The appeal is by the plaintiff.   It was found at the Special Term that she was entitled to some relief by reason of the construction and maintenance of a central or "third track."   It was adjudged that there had been an impairment of fee and rental value by reason of

the construction and operation of such third track; that such impairment, at a money valuation, amounted to a certain sum; that the plaintiff was entitled to an injunction, unless the defendant paid that sum, and, if it were paid an injunction should not issue, and the plaintiff, on such payment being made, was required to convey the additional easements taken.

On this appeal a question arises which has not been finally passed upon in this state, although the plaintiff urges that there is abundant authority to sustain her contention respecting it. The defendant's railway is lawfully operated on two tracks in front of the plaintiff's premises. The right so to operate it by the acquisition of easements appurtenant to those premises is not denied. The construction and operation of a third or central track is the subject of the plaintiff's complaint. She insists that the defendant has no right to maintain the structure of a third track in the street in front of her property, and to operate it with the annoyance and detriment to value which result from the increased traffic, as well as from the permanent character of the superadded structure. As the case is now presented on the findings of fact, and in view of what has been decided by this court respecting the third track of the defendant's road on Ninth avenue, there can be no doubt, I think, that the structure complained of by the plaintiff is an illegal one, although, if the question were res nova, I should have something further to say on that subject. But the statement of what this court has decided is not to be taken as an indication or expression of opinion that the defendant, in constructing and maintaining such third track, acted or now acts in willful disregard of the rights of property owners, or in a high-handed manner, without at least apparent sanction of law. This is not the case of a wanton trespass or the arbitrary creation of a nuisance in the public highway. In 1875 the Legislature of the state of New York passed an act under which the defendant claimed, and had ostensible reason for claiming, the right to build this third track. The provisions of that act would be sufficient to confer that right (the defendant having received the permission of commissioners designated therein), but for considerations stated by this court in the case of Auchincloss v. Metropolitan Elevated Ry. Co., 69 App. Div. 63, 74 N. Y. Supp. 734. It was there held that the defendants derived no authority from the act of 1875 to build or operate this third track, because that legislation was in violation of section 18 of article 3 of the Constitution of the state of New York, wherein it is provided that the Legislature shall not pass a private or local bill "granting to any corporation, association or individual the right to lay down railroad tracks." But it appears satisfactorily from the findings made by the court on the trial of this cause that, as matter of fact, the defendant, in good faith, and relying upon the authority of the act of 1875, did construct the third track. While that does not affect the plaintiff's right to relief for the additional trespass of the defendant, it furnishes a matter for the serious consideration of a court of equity respecting the nature and measure of relief to be awarded.

The plaintiff insists that the judgment to which she was entitled was that of a mandatory injunction requiring the defendant to remove the third track; that she was so entitled as a matter of absolute right, which a court of equity was bound to recognize and enforce, and that it had no

jurisdiction to deprive her of that right by awarding in its discretion any less drastic relief. The argument urged in support of that view, and based upon some of the findings of the trial judge is, in effect, that the defendant illegally deprived the plaintiff of her property, to wit, the easements taken; that it has no corporate capacity to acquire those ease-- ments by proceedings in invitum for their condemnation; that the court at Special Term had no authority to annex any condition to the issuing of an injunction, or to grant any alternative or substituted relief in avoidance of that to which the plaintiff claimed to be entitled absolutely and unconditionally. The single question, therefore, relates to the power of a court of equity in this case to decree that an injunction shall not issue if payment be made by the defendant of the value of the ease- ments taken, and to compel a conveyance of those easements to the de- fendant on the payment of such ascertained value.

If we were to consider alone the findings upon which the plaintiff relies, namely, that the defendant, without authority of law, is maintain- ing and operating the third track in front of her premises, and that it is without capacity to condemn the easements taken by the erection and operation of trains on this third track, the argument which she advances to· support the proposition that a mandatory injunction should issue would proceed very plainly to its conclusion. But that which is influen- tial respecting the relief to be granted is contained in other findings of fact, which undoubtedly affected the learned trial judge in making the decision he rendered. The plaintiff insists that the court is without au- thority to do otherwise than compel the removal of the third track and to award damages for the injury inflicted by taking the easements. Our attention has been called to various decisions in which the plaintiff claims the proposition of law for which she contends is announced, and that under the findings in this case she is entitled to the mandatory in- junction sought. Thus, in Auchincloss v. Met. El. Ry. Co., 69 App. Div. 63, 74 N. Y. Supp. 734, the judge writing the opinion of the court said:.

"I can see no escape, therefore, from the position that the construction of this additional track in. Ninth avenue, opposite the plaintiff's premises, was unauthorized, and that the plaintiff was entitled to an injunction restraining the defendants from the maintenance and operation of this track."

In Ackerman v. True, 175 N. Y. 353, 67 N. E. 629, it was held that an encroachment upon the street is a public nuisance, and may be a private nuisance; that the person suffering thereby may have his action of nuis- ance to abate the same, and to recover special damages. And it was said in Pappenheim v. Met. El. Ry. Co., 128 N. Y. 436, 28 N. E. 518, 13 L. R. A. 401, 26 Am. St. Rep. 486, that in cases where the owner wishes actually to stop further trespass, and where the defendant has no legal right to acquire the property, such condition would not be inserted (meaning the ordinary alternative in cases of· this kind of paying dam- ages and requiring conveyance of the easements), and an injunction would issue upon the right of the owner being determined, citing Hen- derson v. Central R. Co., 78 N. Y. 423. .The authorities cited by the learned counsel for the appellant are to be considered with reference to a rule of law applicable to cases where the facts show only the existence of a nuisance or a· continuing trespass, or, in other words, where· there is.

no legal right or authority to do the acts or to maintain the construction complained of by the injured party; but they do not present, in the form in which it now arises, on additional findings, the question of the power of a court of equity to mould relief in a given case where it can grant all the relief to which, in justice and equity, a plaintiff is entitled, and where it appears that the granting of the full measure of relief demanded would result in greater injury to the defendant than benefit to the plaintiff, and in the impairment of a great public convenience, and also increasing the danger to the traveling public. For here we are not now dealing with the case of a simple trespass originating in a wanton appropriation of private property. There is no taking of private property for a private use, for the defendant is a duly organized corporation, which, acting in good faith, on the belief that it had the right to construct this third track, did so and has operated it for the public convenience for 10 years without objection of the plaintiff, who has owned her property for that period of time and never objected. While, as the law now stands, the defendant has no power to condemn the plaintiff's easements, it, nevertheless, has the power to acquire easements affected by the third track by treaty or contract, and it has, according to the findings, acquired easements from other property owners for the third track to the value of $800,000.

The case is to be regarded, I think, as one in which a court of equity may refuse to grant a mandatory injunction and leave the plaintiff to the ordinary action of nuisance, in which the defendant would be entitled to a trial by jury; but the plaintiff has brought this action, invoked the jurisdiction of a court of equity, and tried the case as an ordinary elevated railway case. We are of the opinion that the simple question involved is the power of a court of equity to render this judgment. That power is exercised in cases in which, by covenants between parties, the use of real estate is limited by what is called "covenants against nuisance." Amerman v. Deane, 132 N. Y. 355, 30 N. E. 741, 28 Am. St. Rep. 584; McClure v. Leaycraft, 183 N. Y. 36, 75 N. E. 961. In such cases the court, on considering the equities, refuses an injunction where it would be inequitable to enforce such covenants under changed conditions of property. In the case of an encroachment (Crocker v. Manhattan Life Ins. Co., 61 App. Div. 226, 70 N. Y. Supp. 492), the court refused to compel the taking down of a wall, because of the oppressiveness of such a condition, and held that, both parties having submitted their controversy to a court of equity, that court would refuse an injunction, and would award damages for one particular item of trespass, and require the plaintiff to surrender an easement with reference to that particular item on payment of damages. We think it is evident in this case, from the findings of fact as made, that the mandatory injunction which the plaintiff claims to be entitled to. if granted, would work great wrong to the defendant, and the court will not exert its equitable power for that purpose. Here, the court, having the power to mould the relief according to the circumstances of the case, acted upon the finding that this third track in front of the plaintiff's premises is used for running express trains in relief of the two tracks constructed, and which are operated by due authority, on front of the plaintiff's premises, and that it specifically found, viz.:

96 N.Y.S.—54

"That the injury to the plaintiff's property is small compared with the injury and inconvenience which would result to the defendant and to the public if the defendant should be compelled to discontinue the use of and remove the same, and, if the track were removed, the defendant's train service would be seriously impaired, and its ability to perform the purposes of a rapid transit railway would thereby be greatly lessened, and the danger incident to the operation of trains would be increased."

Here are findings which we must assume are authorized by the evidence. Not only inconvenience to the defendant and to the public, but danger in the operation of the railway, would be the result of granting a mandatory injunction. The power of the court to mould its judgment in a case where both parties have submitted their rights to the court is not to be affected by the consideration that the defendant has no authority to condemn easements; and the expressions to the contrary in the cases cited by the learned counsel for the appellant seem to have no application in view of the decision of the Supreme Court of the United States in the Bryam River Case, 185 U. S. 95, 22 Sup. Ct. 592, 46 L. Ed. 820. That case involved the right of landowners in the state of Connecticut to an injunction restraining the city of New York, its agents and officers, from diverting the water, or any part of the water, of the West Branch of the Bryam river, or any part of the water of that river. The municipal authorities of the city of New York claimed that they had the right to divert the water of that stream, which had its source in the state of New York, but in its course flowed through the state of Connecticut, and then returned to the state of New York. The city of New York undertook to divert this stream in order to increase its water supply. The plaintiffs in that case insisted upon their right to an undiminished natural flow of the river through its accustomed channel in the state of Connecticut, and that they could not be deprived thereof by the city of New York, or for its benefit, by any legal proceedings either in Connecticut or New York. The United States Circuit Court for the Southern District of New York sustained the plaintiff's prayer for an injunction, and on appeal to the Circuit Court of Appeals the decree was affirmed by a divided court. The case went to the United States Supreme Court on certiorari, and there it was held that, starting with the assumption that there was no power in the city of New York, by any proceedings in the state of New York or Connecticut, to acquire the right to appropriate the water, thus depriving the plaintiffs of its continued flow, nevertheless, the equitable relief of a mandatory injunction would not be granted, at least in a case where long delay in the assertion of the alleged right had taken place. Although the delay itself would not be conclusive of the plaintiff's right to an injunction, it is a subject for the consideration of the court when there are other strong and controlling equities appealing to it.

We are therefore of the opinion that the judgment below shall be affirmed, with costs.

O'BRIEN, P. J., and LAUGHLIN, J., concur.

INGRAHAM, J. I concur in the affirmance of this judgment. The proposition that the defendant had no authority to lay this third track is not open to discussion in this court. Auchincloss v. Metropolitan

El. Ry. Co., 69 App. Div. 63, 74 N. Y. Supp. 734. The act of the de‑ fendant, therefore, in constructing this track was unlawful, and for the damage caused to the plaintiff thereby the plaintiff has a remedy at law. Whether or not a court of equity would interfere by injunction to pre‑ vent a continuance of the unlawful act rests in the sound judicial discre‑ tion of the court; and in determining whether a court of equity should grant an injunction, or should leave the party to her remedy at law, the actual injury sustained by the plaintiff, together with the resulting in‑ jury to the defendant and to the public at large, should be considered. In Gray v. Manhattan Railroad Company, 128 N. Y. 499, 28 N. E. 498, it is said:

"An equity court is not bound to issue an injunction, when it will produce great public or private mischief, merely for the purpose of protecting a tech‑ nical or unsubstantial right."

In this case the defendant constructed the third track, claiming au‑ thority under certain statutory provisions. Its use has become neces‑ sary for the proper operation of the road, and it is quite apparent that the interests of the public, as well as that of the defendant, will be seri‑ ously jeopardized if the defendant is compelled by a mandatory injunc‑ tion to remove the track. It has been determined by the court that all the plaintiff's rights could be protected by the payment to her of a sum of money which it required the defendant to pay to avoid an injunction. The plaintiff, therefore, had the option of accepting this sum of money as the value of her property which was appropriated by the defendant on the construction of this third track, or of resorting to her action at law to recover the damages caused by the trespass. A reasonable relief is therefore afforded the plaintiff without the public injury which would follow from an injunction under which the defendant would be required to remove the track. Under such circumstances I think the court has the power to refuse to grant an injunction upon condition that the value of the plaintiff's property be paid to her, leaving to the plaintiff the right to accept that amount, or to enforce her rights at law. The right of the people or of the city to compel the removal of this track is not presented and consequently not determined. We have an owner of abutting property attempting to enforce her legal rights in a public street by an appeal to a court of equity; and I do not think the discretion of the court of equity in refusing to grant an injunction was improperly exercised in this case.

For these reasons, I concur in the affirmance of the judgment.

O'BRIEN, P. J., and LAUGHLIN, J., concur.