INTERBOROUGH RAPID TRANSIT COMPANY and MAN-
HATTAN RAILWAY COMPANY, Plaintiffs, *v.* THE CITY
OF NEW YORK and GEORGE McANENY, President of
the Borough of Manhattan, Defendants.

(Supreme Court, New York Special Term, November, 1916.)

Statutes — construction of — provisions of — city of New York —
Rapid Transit Act — elevated railroads — rapid transit commission.

The statute known as the first Rapid Transit Act (Laws of
1875, chap. 606) authorized the appointment of commissioners
to determine *inter alia* the necessity for the building and opera-
tion of an elevated railroad in New York city, to decide upon
routes and plans and specifications, and to organize a corpora-
tion to carry out the project in the event of the failure of
plaintiff's predecessor, organized by virtue of chapter 885 of
the Laws of 1872, so to do. Held, that upon the approval by
the rapid transit commission of the completed structures the
rights of plaintiff's predecessor were determined and limited by
the specifications which it had accepted, and in the absence of
legislative authority the construction and the maintenance of
bridges and platforms, except those built with the approval
of the commission prior to the completion of the road, were
unauthorized and illegal and not necessary to the proper
operation of plaintiff's road, as the court may not construe the
word " necessary " so as to mean that every structure which is
to the advantage and convenience of the traveling public is a
lawful use of plaintiff's franchise.

The said statute of 1872 (section 3) provides that the rapid
transit commission shall not designate and establish any line
of the railway on any or either of the streets between the east-
erly line of Third avenue and the easterly line of Sixth avenue.
Held, that with the exception of the part approved by the
said commission, a station platform at the northeast corner of
Eighteenth street and Sixth avenue extending for some distance
beyond the easterly line of said avenue was illegal.

ACTION for an injunction.

James L. Quackenbush (J. Osgood Nichols and Alfred Ely, Jr., of counsel), for plaintiffs.

Lamar Hardy (Samuel J. Rosensohn, of counsel), for defendants.

GAVEGAN, J.   The action is to permanently restrain the defendants from removing certain additions to the elevated railway stations consisting of, *first*, extensions of the station platforms to adjoining buildings at Fourteenth, Eighteenth, Twenty-third and Thirty-third streets and Sixth avenue, and, *second*, bridges crossing the street and connecting north and south bound stations at Rector and Cortlandt streets.   The board of estimate and apportionment directed their removal on the ground that they constituted an illegal and unauthorized use of the public streets.   The defendants do not dispute the usefulness of the extensions, but assert that they are maintained without authority of law.   It becomes necessary, therefore, to briefly review the several charters and also the resolutions affecting them made by duly constituted public officials.   I shall first take up the charters of the companies which are operating what is commonly known as the Sixth Avenue line. By chapter 885 of the Laws of 1872, George B. Grinnel and others were made a body corporate under the name " Gilbert Elevated Railway Co."   This act authorized the construction and operation of an elevated railroad by said corporation over the streets of the city of New York, together with the necessary sidings, stations and platforms.   The route was to be determined by a board of commissioners consisting of five members, and their report was to be fully operative and final when made and delivered to the Gilbert Elevated Railway Company.   Said commissioners established the route substantially as now utilized by

the Sixth Avenue line. The Gilbert. Elevated company encountered difficulty in obtaining the necessary capital to finance the construction and operation of the road, and the legislature, in 1875, passed what is known as the first Rapid Transit Act to provide against the failure of the said company to construct the road. Said act authorized the appointment of commissioners whose duty it was, among other things, to determine the necessity for the building and operation of the elevated railroad; to decide upon routes and upon plans and specifications for its erection, and to organize a corporation to carry out the project in the event of the Gilbert company's failure to do so. Pursuant to said act the then mayor of the city of New York appointed five commissioners, who, after their organization, notified the Gilbert company that they desired to hear from it in reference to an application received for leave to construct and operate a railroad. Said commissioners made certain rules and regulations for the construction and operation of the road, and requested the Gilbert company to consent thereto, which it accordingly did. The rules and regulations so far as material to the present controversy provided that the Gilbert company should modify the plan of the structure which the company was then authorized to build so as to conform to the specifications and requirements adopted by the commissioners. Stations were to be arranged so as to be convenient of access from the street, and authority was given to construct such supports, turnouts, switches, station buildings, platforms, stairways and other appliances upon the routes and in the locations determined by the commissioners as should be proper to meet the requirements of the traveling public. Under the powers conferred upon them by the fourth section of the act, the commissioners made a special location for a route over the same ground which, to

distinguish it from the route already existing and known as " chartered route," they called " commission route." This route was coincident with the chartered route of the Gilbert company, except for some additions relative to cross streets. There was thereupon incorporated the Manhattan Railway Company, which was given solely and merely an alternative right to build the railroad on Sixth avenue from the Battery to Forty-second street in case of default in construction on the part of the Gilbert Elevated Railway Company, or its successor, the Metropolitan Elevated Railway Company. The railroad was completed, however, by the Gilbert company, which had changed its name to Metropolitan Elevated Railways Company in the year 1879, and the rights of the Manhattan Railway Company as to these portions of the route and railway, therefore, ceased and determined. When the elevated structure was finished in 1879, it contained full and complete stations, with adequate stairways for access to and from the street at Rector street and Trinity place, Church street, Cortlandt street, and Sixth avenue at Fourteenth street, Eighteenth street, Twenty-third and Thirty-third streets, respectively. Since that time, however, these stations have been added to in the manner which the defendants contend was unlawful and unauthorized. Upon the completion and approval by the rapid transit commissioners of the elevated railroad structure, the rights of the Gilbert Elevated Railway Company were fixed and determined. The purpose of the Rapid Transit Act in providing for the appointment of commissioners was to do justice to the public and the railroad corporation alike. The commissioners were given the power to fix routes, stations and structures, which the railroad company were at liberty to accept or reject. Having once accepted the specifications laid down by the commis-

sioners the company was limited thereto and it was never thereafter authorized to reconstruct the stations in such a manner as to put an additional burden upon the public, nor were the commissioners authorized to delegate to the company their powers to do so. *Auchincloss* v. *Metropolitan El. R. R. Co.*, 69 App. Div. 63. "But when the road was once built according to the plans proposed by the company and approved by the commissioners, it would seem that the duties they were to perform were terminated, and that there was no reason for their continued existence. There is certainly nothing in this act which contemplates any extension of the road or the building of additional tracks which should be required in the future. The railroad company was required to construct the road which it was authorized to build within five years, * * * and any construction of that road, either with or without the approval of the commissioners after five years had expired, would seem to be unauthorized." *Auchincloss* v. *Metropolitan El. R. R. Co.*, *supra*, 74. It follows, therefore, that in the absence of legislative authority the construction and the maintenance of the several bridges and platforms referred to in the complaint, except those built with the approval of the commissioners prior to the completion of the road, are unauthorized and illegal. *Brooklyn Heights R. R. Co.* v. *Steers*, 213 N. Y. 73. See, also, *Erie R. R. Co.* v. *Steward*, 170 id. 172. The plaintiff urges, however, that, conceding that no express power was given it and its predecessors to add to the stations and bridges referred to, such structures are legal as incidental to its franchise to operate its road because they are "necessary" to the proper use thereof by the public. A careful examination of the testimony convinces me that while the structures complained of may be useful and convenient, more

especially for the owners, occupants and patrons of the different stores and buildings which they connect with the railroad, they cannot be said to be *necessary* for the accommodation of the public at large. A great number of people undoubtedly use them advantageously and thereby relieve to some extent the congestion at the various stations, but they could nevertheless descend and ascend by the railway stairways without unduly impeding ordinary traffic. The court cannot, however, so construe the word " necessary " as to mean that every structure which is to the advantage and convenience of the traveling public is a lawful use of the plaintiff's franchise. If such were the construction to be placed thereon it would be lawful for plaintiff, under the guise of making *necessary* additions to its road, to place a complete network of platforms and extensions covering the entire thoroughfares along its route and connect its tracks with every store or building in close proximity thereto. I am unable to find that this was the intention of the legislature. On the contrary, I am of the opinion that it was intended that the plaintiff's road and stations should be built with the least possible obstruction not only to the streets themselves, but overhead. If any other construction were intended the legislature would have extended the powers of the rapid transit commission so as to empower it to authorize additions to the original structures. I feel constrained, therefore, to hold that under the circumstances of the present case the structures above referred to are not necessary to the proper operation of plaintiff's railroad. The station platform at the northeast corner of Eighteenth street and Sixth avenue and connecting with the Siegel, Cooper & Greenhut building is illegal, for the additional reason that it violates not only the spirit but the letter of section 3 of chapter 885 of the Laws of 1872, which

provides that "said commission shall not designate and establish as or for the locality any line of said railway on any or either of the streets, avenues, thoroughfares or places lying or situated between the easterly line of Third avenue and the easterly line of Sixth avenue." The evidence clearly shows that the structures above mentioned extend for some distance beyond the easterly line of Sixth avenue, and if they be authorized in their present condition the plaintiff with like authority would be permitted to extend such structures to each and every store in the block on said Eighteenth street between Fifth and Sixth avenues. The plaintiff relies principally upon the case of *Rothschild* v. *Chicago*, 227 Ill. 205, to support its contention that the structures which are the subject of this action are authorized and legal. An examination of the decision in that case shows, however, that the Supreme Court of Illinois was influenced not by the fact that the structure was authorized under the general power granted by the Railroad Act of that state, but rather by the fact that said structure was expressly authorized by the common council of the city of Chicago, which was given power to authorize its construction and maintenance. No such authority is shown in the case at bar. Statutes and regulations similar to those above set forth are applicable also to the Ninth Avenue railroad at Greenwich and Rector streets, and for the same reason I find that the structure erected and maintained by that road at that point is likewise unauthorized and illegal, except as to those portions thereof erected and maintained and approved by the commissioners appointed in the same manner as those who had to do with the supervision of the Sixth Avenue line. If these conclusions are correct it follows that the structures complained of can be maintained in the future only by permission from the board of estimate

and apportionment of the city of New York to be granted under proper conditions. There must be judgment for the defendants, dismissing the complaint, with costs, in accordance with the relief asked, except as to those structures which were completed and authorized by the commissioners when said roads were completed.

Judgment accordingly.