ROTHSCHILD v. INTERBOROUGH RAPID TRANSIT CO. et al.   (No. 5893.)

(Supreme Court, Appellate Division, First Department.   May 29, 1914.)

1. EMINENT DOMAIN (§ 105*) — RIGHT TO COMPENSATION BEFORE TAKING — EASEMENTS OF LIGHT, AIR, AND ACCESS.

The owner of an elevated railroad consisting of two tracks has no right to reconstruct its road so as to include four tracks and two station platforms at different levels, destroying in a much larger measure than before an abutting owner's easements of light, air, and access without making due compensation or taking such steps as will insure the payment of proper compensation, though such reconstruction is a part of a comprehensive plan for rapid transit agreed upon by the city, the board of public service commissioners, and the companies operating elevated and other railways.

᛫ [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 282–289;  Dec. Dig. § 105.*]

2. EMINENT DOMAIN (§ 275*)—REMEDIES OF PROPERTY OWNERS—RESTRAINING TAKING.

An abutting owner, whose easements of light, air, and access are about to be destroyed by the erection or reconstruction of an elevated railway structure in front of his property, is entitled, as a matter of right, to enjoin such erection, unless he be duly compensated, however slight his damages, though a much needed public convenience will thereby be delayed.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 769–773;  Dec. Dig. § 275.*]

3. EMINENT DOMAIN (§ 275*)—REMEDIES OF PROPERTY OWNERS—RESTRAINING TAKING.

The presumption that a municipality will at all times be able to pay whatever compensation may be found due, upon which statutes authorizing municipalities to take possession of private property required for public uses before making compensation are based, cannot be extended to a private corporation, however large or apparently prosperous.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 769–773;  Dec. Dig. § 275.*]

4. EMINENT DOMAIN (§ 292*)—TEMPORARY INJUNCTION—RESTRAINING CONSTRUCTION OF ELEVATED RAILWAY.

The reconstruction of an elevated railway, so as to destroy to a greater extent than before an abutting owner's easements of light, air, and access, would be enjoined on a preliminary motion, where there was no material disputed question of fact, instead of awaiting the trial of the action, pending which the structure would probably be completed.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 750, 751;  Dec. Dig. § 292.*]

Ingraham, P. J., dissenting.

Appeal from Special Term, New York County.

Action by David Rothschild against the Interborough Rapid Transit Company and another.  From an order denying a motion for an injunction pendente lite, plaintiff appeals.  Reversed, and injunction granted.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Arthur Furber, of New York City, for appellant.
J. Osgood Nichols, of New York City, for respondents.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

SCOTT, J.  Plaintiff is the owner of the houses and lots known as Nos. 194, 196, and 198 Park Row in the city of New York, on the southwesterly corner of Park Row and Worth street, containing a frontage of 80 feet 9 inches on Park Row.  The buildings are occupied for businesses of various characters, and are of substantial value.  The defendant owns and operates an elevated railroad along Park Row in front of plaintiff's premises, now consisting of two tracks.  In 1905 plaintiff settled with the defendant for the damage suffered by him in consequence of the construction of the railroad as it now exists.

[1, 2] The defendant is about to reconstruct its road in front of plaintiff's premises by widening its structure from a two-track to a four-track road, the new structure being at least twice as wide as the present structure, and therefore occupying twice as much of the street. The tracks will be at different levels, and there are to be two station platforms, also at different levels.  It is perfectly apparent from the plans and affidavits submitted upon this motion, and indeed is not denied by defendant, that the consequence of the reconstructed road and two stations will be to destroy, in much larger measure than does the present structure, plaintiff's easements of light, air, and access.  In other words the effect will be to destroy, to an extent, plaintiff's property rights.  His motion is that defendant be restrained from thus destroying and seizing his property until it shall have acquired the right to do so by appropriate condemnation proceedings, and this he asks as a matter of strict right, and not as a favor to be granted in the discretion of the court.

The particular piece of work respecting which the plaintiff finds a grievance is a part of a very extensive plan for the addition to and reconstruction of the elevated railway lines in the city of New York, and constitutes a part of the comprehensive plan for rapid transit within the city recently agreed to between the city, by the board of estimate and apportionment, the board of public service commissioners and the companies now owning or leasing and operating surface, elevated, and subterranean railways in the city.  That the projected alterations, amounting to a partial reconstruction of the elevated railways, is an important part of this general scheme, and the part likely to give the speediest relief from present congestion of travel, is not to be questioned, but that fact does not justify an unlawful invasion of private rights, or the forcible taking or destruction of private property without first making due compensation, or at the least taking such steps as shall insure the payment of proper compensation to the property owner who is to be injuriously affected.  That such a structure as defendant is about to erect in front of plaintiff's premises is inconsistent with the use of Park Row as a public street, and will result in the taking and appropriating of plaintiff's property for which he is entitled to compensation, is no longer open to question.  It has been so settled in a long line of familiar cases, in which every conceivable argument to the contrary has been urged by this defendant and other companies operating elevated railroads, but uniformly without success.  As a result the courts in this county have been kept busy for more than 20 years, at great public expense, in trying equity cases brought by injured prop-

erty owners against the railroad companies, which have, in effect, been nothing more than inverted condemnation proceedings under the guise of suits in equity. The common form of judgment in all such cases has involved the recognition of the principle that until an abutting property owner has been properly compensated for the property of which he is deprived, the structure in front of his property is illegal and a nuisance, which must be abated and removed unless compensation is paid. That the erection of the original elevated railways was not enjoined in the first instance was due to the fact that the rights of abutting property owners were not definitely settled until long after the roads had been constructed and put into operation. As the companies persistently refused to institute condemnation proceedings, there was nothing left for the aggrieved property owners except to commence actions in equity for injunctions, and thus, often after years of delay, collect the compensation which should have been paid them at the outset. This to their great expense as well as at great cost to the public. That an abutting owner whose property rights are about to be destroyed by the erection of an elevated railway structure in front of his property is entitled to an injunction to restrain such erection, unless he be duly compensated, has been frequently held. Thus in Tallman v. Met. El. R. R. Co., 121 N. Y. 119–123, 23 N. E. 1134 (8 L. R. A. 173), the Court of Appeals said:

"When the defendant began to construct its railway in front of plaintiff's lots, he could have commenced an action in equity against it and restrained it until it had made compensation to him for the rights and easements which it took from him, or until it had acquired them by condemnation proceedings."

See, also, Galway v. Met. El. Ry., 128 N. Y. 145, 28 N. E. 479, 13 L. R. A. 788.

In Uline v. N. Y. Cen. & H. R. R. R. Co., 101 N. Y. 98, 106, 4 N. E. 536, 539 (54 Am. Rep. 661), it was said:

"Railroads are authorized to be built by law; but before a proposed railway can be lawfully built, its builders must obtain the right of way; they cannot take private property for that purpose without first making compensation therefor, and if they do, they become trespassers."

To the same effect is Auchincloss v. Met. El. Ry. Co., 69 App. Div. 63–69, 74 N. Y. Supp. 534. In fact it may be said to be a rule of universal application in this country that railroad and other corporations will be restrained from taking private property for public purposes until due compensation has been made to the property owner, or at least some sure and certain provision be made that he will be properly compensated without unreasonable delay, by means of treaty or condemnation. See cases collected and cited in Lewis on Eminent Domain (3d Ed.) § 961, p. 1568; McElroy v. Kansas City, etc. (C. C.) 21 Fed. 257–261. This principle has become a rule of property protected by the constitutional provision that private property shall not be taken for public purposes without just compensation (Const. art. 1, § 6), and the enforcement of the rule by injunction is a well-established exercise of equitable jurisdiction.

[3] There are cases in which municipalities have been permitted by statute to enter upon and take possession of private property required

for public uses before making compensation. Such provisions are frequently found in statutes authorizing the city of New York to open a street, or to make other public improvements. This is upon the theory that there is a presumption that the municipality will, at all times, be able to pay whatever compensation may be found due, a presumption which the court is not justified in extending to any private corporation, however large or apparently prosperous. But even in such cases the right of the city to enter upon private property is never given except in conjunction with condemnation proceedings. I am clearly of the opinion, therefore, that plaintiff is entitled as a matter of strict right to restrain the construction proposed to be erected in front of his premises until the defendant shall initiate the appropriate proceedings to acquire the private property it is about to take and destroy. It is no answer to say that the plaintiff's probable damage will be slight. There is no presumption that it will be such, and there is certainly no evidence before us upon which we could make a finding to that effect. But suppose it is so. Whatever be the value of his easements which are about to be destroyed, he is entitled to be paid for them. The rule de minimis cannot stand in the way of a constitutional right. Nor is it an answer to say that to grant this injunction (and others that may be expected to follow it) will delay a much needed public convenience. Even if this were necessarily true, it would be no reason for unlawfully taking private property. But it is not necessarily true. The work need not be delayed, unless the defendant elects to delay it. Chapter 506, Laws 1910, as amended by chapter 510, Laws 1913, so amended the Rapid Transit Act of 1891 (chapter 4) as to provide for this very case. It provides that any corporation receiving a franchise under the Rapid Transit Act, if unable to agree with the owner for the purchase of any property, easement, or interest therein, shall have the right to acquire title to the same pursuant to title 1, c. 23, of the Code of Civil Procedure, known as the Condemnation Law. The act then proceeds as follows:

"When any corporation authorized under any provision of this act to construct, maintain or operate an additional track or tracks added to any existing elevated railroad or to construct, maintain or operate an extension of such railroad or to acquire terminal or other facilities for any such railroad or extension shall have duly instituted condemnation proceedings, under the provisions of chapter 23 of the Code of Civil Procedure, by serving a petition and notice in said proceedings, to acquire such real estate or easements therein, or rights appurtenant thereto, as may be necessary to construct, maintain or operate such additional track or tracks, extension or terminal or other facilities, the court, upon due hearing had at a special term of the Supreme Court held in the judicial district where the property or some portion of it is situated, and upon notice in said proceedings served upon all the owners of the property at least eight days prior to said hearing, in the manner prescribed in title 1 of chapter 23 of the Code of Civil Procedure for the service of the petition and notice, may, where it appears to its satisfaction [of the court] that the public interests will be prejudiced by delay, direct that the plaintiff be permitted to enter immediately upon the real property to be taken and devote it temporarily to the public use specified in the petition, upon depositing with the court such sum or giving an undertaking in such amount and subject to such conditions as the court may deem sufficient to secure the payment of the award that may be made, and the costs and the expenses of the proceedings and for the payment of any damages which the defendant in

such proceedings may have sustained by such entry upon and use of his property; but the sum so deposited or undertaking so given shall be at least equal to twice the assessed valuation, if any, of any real estate to be so taken. The court may, at any time, upon like hearing and notice given by either party to said proceedings, give such further directions in respect to any such deposit, undertaking or condition as it may deem just and proper, and in every case the owner may conduct the proceedings to a conclusion if the plaintiff delays or neglects to prosecute the same and if the sum so deposited or security so given shall be insufficient to pay the said award and said costs, expenses and damages, and if the plaintiff shall fail to pay the amount of such deficiency, judgment shall be entered against the plaintiff for the deficiency and the possession of the property shall be restored to the defendant."

[4] Here is a provision of law, undoubtedly drawn to meet just such a case as the present, which, if followed, will preserve the rights of every property owner, and at the same time permit of the speedy prosecution of the work which the defendant has in hand. If it be objected that an injunction should not issue upon a preliminary motion, but should await the trial of the action, the obvious answer is that there is no material disputed question of fact to be tried. It is conceded that it is defendant's purpose to erect the structure described in the moving papers, and it is perfectly obvious and not disputed that the erection of the structure will result in an appropriation of plaintiff's property. Upon these facts, which cannot be changed upon a trial, the plaintiff's right to relief is clear. Under such circumstances to compel him to await a trial, which probably cannot be had for some months, and probably not until the structure has been completed, would in my opinion be a denial of justice and an infraction of plaintiff's clear rights.

The order appealed from should be reversed, with $10 costs and disbursements, and the motion granted to the extent that an injunction pendente lite be issued restraining defendants, its officers, servants, etc., from proceeding further with the erection of its proposed structure in front of plaintiff's premises unless and until it shall have commenced proceedings to condemn plaintiff's property, easements, or interests therein proposed to be acquired, and shall have otherwise complied with the provisions of chapter 510, Laws 1913, as to securing the payment of such compensation as plaintiff shall be found to be entitled to.

CLARKE, SCOTT, and DOWLING, JJ., concur. INGRAHAM, P. J., dissents.

LAUGHLIN, J. I concur in the reversal and in granting a temporary injunction, but I think it should take effect only in the event that a condemnation proceeding is not instituted within 60 days.