APPLEBY et al. v. CITY OF NEW YORK et al. (No. 6828.)

(Supreme Court, Appellate Division, First Department. March 19, 1915.)

1. APPEAL AND ERROR ⬿874—INTERLOCUTORY INJUNCTION—CONSIDERATION OF MERITS.

When the essential and controlling facts are presented by the motion papers, and are undisputed, and no question of discretion is involved, the court may consider the merits, even on an appeal from an order granting or refusing a preliminary injunction.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3478, 3480, 3481, 3484, 3530-3540; Dec. Dig. ⬿874.]

2. NAVIGABLE WATERS ⬿36—LAND UNDER WATER—OWNERSHIP.

Land under water in the Hudson river, which was originally outside high-water mark, upon the separation of the colonies of Great Britain, became vested in the state of New York.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 180-200; Dec. Dig. ⬿36.]

3. NAVIGABLE WATERS ⬿37—LAND UNDER WATER—OWNERSHIP—FEDERAL AND STATE CONTROL.

The state of New York, having title to land under water along the Hudson river, by Laws 1826, c. 58, directed the commissioners to issue letters patent to the city of New York, granting such lands from low-water mark running 400 feet into the river, between designated points, and by Laws 1837, c. 182, confirmed it as a grant to the city of lands under water easterly of the line of a projected avenue, and extended intersecting streets to such avenue. Thereafter the city granted to plaintiff's tes-

⬿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tator and devisor its title to certain lots of land under water extending between such streets from high-water mark to the avenue. Laws 1855, c. 121, appointed a commission to establish certain bulkhead and pier lines, which lines were adopted by Laws 1857, c. 763, fixing the bulkhead lines at certain points in the river within such 400 feet which lines were extended pursuant to Laws 1871, c. 574, and in 1890 approved by the Secretary of War. *Held* that, while plaintiff retained the fee to the land granted, such acts of the state and federal government debarred him from reclaiming land under water or preventing any use of water beyond the established bulkhead lines.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 201–226, 285; Dec. Dig. ☞37.]

4. COMMERCE ☞18—PUBLIC RIGHTS—FEDERAL AND STATE CONTROL.

The Hudson river being a navigable stream, the powers of Congress over its waters are incident to its power to regulate commerce, and paramount, though, until Congress exercises such power, the state has jurisdiction over such waters within its confines, subject to the reserved power of the federal government to supersede its authority, so that persons to whom the city of New York, as grantee of the state, has granted title to land under navigable waters, took subject to the exercise of the federal government to determine how far such streams may be encroached upon.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 12, 13; Dec Dig. ☞18.]

Appeal from Special Term, First Department.

Action by Edgar S. Appleby and others, individually and as executors and devisees of Charles E. Appleby, deceased, against the City of New York and others. From an order denying a motion for an injunction pendente lite, plaintiffs appeal. Order affirmed as matter of right, and not in the exercise of discretion.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

Banton Moore, of New York City, for appellants.
Terence Farley, of New York City, for respondents.

SCOTT, J. Plaintiffs, as executors of the will of, and devisees of, Charles E. Appleby, deceased, are the owners of land under water of the area of two city blocks lying between Twelfth and Thirteenth avenues, as heretofore projected and laid out, and Thirty-Ninth and Fortieth streets, and Fortieth and Forty-First streets, in the city of New York. The city has constructed piers at the foot and in extension of said streets, and has leased to various persons and corporations, defendants herein, the exclusive right to use parts of said piers which extend into the river far beyond the limits of the projected, but unbuilt, Thirteenth avenue. The use of these piers involves the temporary mooring of vessels alongside them, and some of these vessels are thus moored, from time to time, over the land under water owned by plaintiffs.

[1] It is not customary, upon an appeal of this character, to pass upon the merits of the controversy between the parties; but when the essential and controlling facts are presented by the motion papers, and are undisputed, as is the case here, and no question of discretion is involved, it is not unusual to consider the merits, even upon an appeal

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

from an order granting or refusing a preliminary injunction. Roth-schild v. Interborough R. T. Co., 162 App. Div. 532, 147 N. Y. Supp. 1040; Dutton Co. v. Cupples, 117 App. Div. 172, 102 N. Y. Supp. 309.

[2] Plaintiffs' title is derived from two deeds, commonly known as "water grants," identical in terms except as to the property granted, one of which was made to Charles E. Appleby on August 1, 1853, and the other of which was made to Robert Latou on December 24, 1852; the said Latou having subsequently conveyed the premises granted to the aforesaid Charles E. Appleby, of whom plaintiffs are the successors in interest and title. All of the land under water involved in the action was originally outside of high-water mark, and upon the separation of the colonies from Great Britain became vested in the state of New York. People v. N. Y. & Staten Island Ferry Co., 68 N. Y. 71.

[3] By chapter 58 of the Laws of 1826 the commissioners of the land office were directed to issue letters patent to the city of New York, granting to it all the right and title of the state "to the lands covered with water along the easterly shore of the North or Hudson river, contiguous to and adjoining the lands of the said mayor, aldermen and commonalty, within the said city of New York, at and from low-water mark, and running 400 feet into said river," between certain designated points. Later, by chapter 182 of the Laws of 1837, this grant was confirmed and directed to be so construed as to grant to the city the lands under water easterly of the westerly line of Thirteenth avenue, which was by said act established as the permanent exterior street or avenue in the said city along the easterly shore of the North or Hudson river, between the southerly line of Hammond street to the northerly line of 135th street. The act also extended the in-tersecting streets to said Thirteenth avenue. At this time Thirteenth avenue as projected, and all the territory east of it up to Twelfth avenue was, as it is now, land under water.

The grants to Appleby and Latou each conveyed "all that certain water lot or vacant ground and soil under water and to be made land and gained out of the Hudson or North river or harbor of New York," extending between the streets above named from the line of original high-water mark to the westerly line or side of Thirteenth avenue. As the original line of high water was some distance to the east of Twelfth avenue, the grant covered much more than the particular land under water involved in this action, which is only the land lying between Twelfth and Thirteenth avenues. The grants excepted and re-served so much of the premises described therein as constituted, upon the map attached thereto, Twelfth and Thirteenth avenues and the intersecting streets. It also contained the usual covenant on the part of the grantee that he would "within three months next after he shall be thereunto required by the parties of the second part or their suc-cessors" build and fill in the aforesaid streets and avenues. Each grant also contained the following clause:

"And it is hereby further agreed by and between the parties to those pres-ents, and the true intent and meaning hereof is, that this present grant and every word or thing in the same contained shall not be construed or taken to be a covenant or covenants of warranty or of the seisin of said parties of

the first part or their successors, or to operate further than to pass the estate, right, title, or interest they may have or may lawfully claim in the premises hereby conveyed by virtue of their several charters and the various acts of the Legislature of the people of the state of New York."

It is evident that the plan and policy of the city for the improvement of its water front along the North or Hudson river was, at this time, the construction of an exterior street, to be known as Thirteenth avenue, with a continuous bulkhead, and solid filling inside and to the eastward of that bulkhead. This plan was, however, soon abandoned, and in 1855 an act was passed (chapter 121 of the Laws of that year) under which a commission was appointed by the Governor, which recommended to the Legislature the establishment of certain bulkhead and pier lines. The lines thus recommended were approved and adopted by the Legislature by chapter 763, Laws 1857, entitled: "An Act to establish bulkhead and pier lines for the port of New York." By that act the bulkhead line at the point in question was located about 100 feet west of the westerly line of Twelfth avenue, and at Forty-First street about 300 feet east, and at Thirty-Ninth street about 262 feet east of the easterly line of Thirteenth avenue. Subsequently, and on April 13, 1871, the municipal authorities, pursuant to authority contained in the charter of 1871 (chapter 574, Laws 1871), adopted a final plan which established a bulkhead line or line of solid filling 50 feet further out into the river than had been established in 1857. In 1890 the Secretary of War of the United States, pursuant to authority vested in him by the Congress, established a bulkhead line which coincides with the line adopted by the city in 1871.

We think that there can be no doubt that by the acts of the federal and state governments above recited plaintiffs' predecessor in title was effectually debarred from reclaiming the land under water by carrying out the line of solid filling beyond the bulkhead lines thus established. The grantees of the city of New York, no matter how wide the language of the grants may have been, could take no more than the city itself possessed and was authorized to grant, and so the grant itself expressly provided. The grants from the state to the city, and from the latter to its grantees, were made with a view to the improvement of the water front and for the advancement of commerce. Undoubtedly the grants to Appleby and Latou conveyed a title in fee to the lands under water, but it was a fee qualified as to the uses to which the land could be put and subject to the control of the state and federal authorities as to such uses. What the grantees from the city acquired was a naked fee, with the right to fill in and make land to be gained out of the North river when and if, but not until, required so to do by the city of New York. This seems to be well settled. In People v. N. Y. & Staten Island Ferry Co., 68 N. Y. 71, the Court of Appeals had before it a grant made by the state of New York to one Gore of land under water adjacent to Staten Island. The court said:

"The grant to Gore in 1818 was authorized by law, and he acquired thereby the title to the soil under water embraced within the grant; but there is nothing in the words of the grant, or in the statute which authorized it, indicating any purpose of interfering with the public right in the water of the bay. * * * The grant operates as a license from the state to the grantee to

erect wharves and piers upon the lands granted. This is according to the general understanding, and is the practical construction of grant made under the act. The grantee acquires the title to the soil, and the state cannot annul the grant, and the grantee, by virtue of his proprietary interest, can exclude any other person from the permanent occupation of the land granted, and wharves and piers erected by the grantee, upon the land embraced in the grant are not per se nuisances. But the state does not under the act of 1813 divest itself of the right to regulate the use of the granted premises in the interest of the public and for the protection of commerce and navigation. The grant is subordinate to the paramount right of the public, and it is one of the important functions and duty of the state to protect public highways against obstructions and encroachments to the injury of the people. The grant to Gore contained no words excluding the exercise by the state of governmental control of the waters above the land granted as a public highway, and if, in exercising this control, the grantee is restricted in the use of his property, it is not in contravention of the grant, but consistent with it, because the grant, by well-settled words of construction, was subject to the exercise of this right and attribute of sovereignty."

The court then referred to chapter 763, Laws 1857, above referred to, which established pier and bulkhead lines for the port of New York and greatly restricted the extent to which land under water might be built upon or filled in. It said:

"When this act was passed, no piers had been erected on the Gore grant, and, so far as appears, there was unity of title to the whole tract embraced therein. This act was a lawful exercise of legislative power, as a regulation for the benefit of commerce and navigation, and the owners of the Gore grant were bound to observe it, and in erecting piers to conform to its directions."

We think that there can be no doubt, as was said in Knickerbocker Ice Co. v. Forty-Second St. R. R. Co., 176 N. Y. 408, 68 N. E. 864, that:

"The title of the city of New York in the tideway and the submerged lands of the Hudson river, granted under the Dongan and Montgomerie charters and the acts of the Legislature of 1807, 1826, and 1837, was not absolute and unqualified, but was subject to the right of the public to the use of the river as a water highway."

And, as has already been said, the grantees from the city could obtain no more absolute and unqualified title than the city itself held. It seems to·be quite clear, then, that plaintiffs' predecessors in title, while retaining title in fee to the soil under water, long since lost the right to fill in and make solid land outside of the bulkhead line established by authority of the state in 1871. Many of the cases relied upon by plaintiffs have no application, because they arose with reference to lands which had been filled in and reclaimed. As was said in the Staten Island Ferry Co. Case, supra:

"We need not inquire what the rights of a grantee would be in respect to piers and wharves, erected under the license implied from the grant before it had been revoked, or the state had, in the exercise of its discretion, made regulations upon the subject."

If, however, any doubt should exist as to the right of plaintiffs' predecessors in title to fill in outside of the bulkhead line established in 1871, there can be no doubt, as we consider, that such right was finally and completely lost in 1890, when the Secretary of War, acting under

the authority of Congress, established the same bulkhead line that had been established by the city under authority of the state in 1871.

[4] The Hudson river is, of course, a navigable stream, and the power of Congress over such waters is an incident to its power to regulate commerce, and is paramount when exercised, to the power of the state. So long as Congress does not see fit to exercise this paramount power, the states have jurisdiction over navigable waters within their own confines; but there always remains the reserved power of the federal government to step in and supersede the state authority, and this it may do even with respect to navigable waters lying wholly within the state limits. Rhea v. Newport News & M. Valley R. R. Co. (C. C.) 50 Fed. 16. Hence it follows that the control and development of all navigable streams remains within the ultimate jurisdiction of the federal government, and that all persons who acquire, by grant from the state, title to lands under water within the limits of a navigable stream, do so subject to the exercise of the federal government of its power to determine how far such streams may be encroached upon. Garrison, Secretary of War, v. Greenleaf Johnson Lumber Co., 215 Fed. 576, 131 C. C. A. 644. See, also, Scranton v. Wheeler, 179 U. S. 141, 21 Sup. Ct. 48, 45 L. Ed. 126.

It seems to us therefore to be clear beyond reasonable dispute that the owners of the land under water involved in this action lost in 1871, and certainly in 1890, whatever prospective right they may theretofore have had to fill in and reclaim outside of the bulkhead line then established. They never had the right, but only a duty, if called upon, to build the piers at the foot of and in extension of the intersecting streets. If these views are sound, there is no ground for the injunction sought by plaintiffs. The grants under which they claim, as already pointed out, were made with a view to filling in and reclaiming from the Hudson river the area granted. The right to so fill in having been taken away by subsequent acts of the state and the United States, the waters covering the granted lands have been preserved for the uses of commerce and navigation precisely as if no grant had been made. Plaintiffs retain the naked fee to the soil under water, but without the right to impede or prevent the use of the water for the purposes for which they have been so preserved. Plaintiffs could not fill in to the line of Thirteenth avenue, or throw booms across the spaces between the piers, and thus prevent the use of the waters by the public for commercial purposes. Nor can they achieve the same purpose by injunction.

The order appealed from must be affirmed, as a matter of right, and not in the exercise of discretion, with $10 costs and disbursements. All concur.