CITY OF NEW YORK v. APPLEBY et al.   (No. 7483.)

(Supreme Court, Appellate Division, First Department.   June 18, 1915.)

1. MUNICIPAL CORPORATIONS ☞980—TAX LIEN—LEVY AND ASSESSMENT—
   · OBSERVANCE OF STATUTE.

   While the tax lien of Greater New York Charter (Laws 1901, c. 466) § 1035, added by Laws 1908, c. 490, and amended by Laws 1911, c. 65, is purely a creature of statute, and proceedings for its sale and transfer must be had in substantial compliance with the statute to be valid, failure to comply strictly with provisions intended to instruct the public officers and secure uniformity of procedure will not cause invalidity.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2124–2133; Dec. Dig. ☞980.]

2. MUNICIPAL CORPORATIONS ☞980—TAXATION—TAX LIEN—DESCRIPTION OF
   PROPERTY—STATUTE.

   Under Greater New York Charter (Laws 1901, c. 466) § 1030, added by Laws 1908, c. 490, providing that the transfer of a tax lien shall contain a description of the real property affected, and shall refer with certainty to the description of the lot on the tax map, by its lot number, and the number of the block, ward, or section, in which it is contained, where, on transfer of a tax lien, the property was described as consisting of lot 17, block 665, section 3, in the borough of Manhattan, although it was not stated that the lot, block, and section referred to the tax map, the omission was not fatal to the validity of the transfer, since the description complied with the requirements of the statute.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2124–2133; Dec. Dig. ☞980.]

3. MUNICIPAL CORPORATIONS ☞980—TAXATION—ASSESSMENT ROLL—STAT-
   UTE.

   It was no objection to the validity of a tax lien, transferred and sought to be foreclosed under Greater New York Charter (Laws 1901, c. 466) § 1035, added by Laws 1908, c. 490, that the amount of the tax was set down in the sixth column of the assessment roll, instead of the fifth, as required by statute.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2124–2133; Dec. Dig. ☞980.]

4. MUNICIPAL CORPORATIONS ☞980—TAXATION—ASSESSMENT OF NONEXIST-
   ENT PROPERTY—REMEDY.

   In a proceeding under Greater New York Charter (Laws 1901, c. 466), § 1035, added by Laws 1908, c. 490, to foreclose a transferred tax lien,

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

it was no defense that the assessment of the land was based on the assumption that a bulkhead was on the property, when such was not the case, since the exclusive remedies of the taxpayer in such case are to review the assessment by a certiorari or to apportion the tax.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2124–2133; Dec. Dig. ⊜⫯980.]

5. MUNICIPAL CORPORATIONS ⊜⫯980—TAXATION—TAXABLE LIEN—ASSESSMENT OF PROPERTY—REMEDIES.

In a proceeding under Great New York Charter (Laws 1901, c. 466) § 1035, added by Laws 1908, c. 490, to foreclose a transferred tax lien, it was no defense that property not belonging to the defendant was included in the land assessed, since the exclusive remedies of the taxpayer in such case are to review the assessment by a certiorari or to apportion the tax.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2124–2133; Dec. Dig. ⊜⫯980.]

6. MUNICIPAL CORPORATIONS ⊜⫯980—TAXATION—TAX LIEN—SALE—PUBLICATION OF NOTICE—STATUTES.

Greater New York Charter (Laws 1901, c. 466) § 1027, added by Laws 1908, c. 490, provides that the tax lien on realty in the city of New York shall not be sold at public auction for nonpayment of any tax, etc., unless notice of such sale shall have been published in the City Record and the corporation newspapers. Section 1526 provides that no notice shall be inserted in any of the newspapers designated as corporation newspapers in the city of Brooklyn, except such matters as relate to the borough of Brooklyn exclusively. The corporation newspapers of the city of New York were the City Record and a number of Brooklyn papers. Notice of the sale of a tax lien on land situated in the borough of Manhattan was published only in the City Record. *Held,* that such publication was proper, since the statutes, when construed together, to give a reasonable interpretation to each provision, required only publication in the New York paper.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2124–2133; Dec. Dig. ⊜⫯980.]

7. MUNICIPAL CORPORATIONS ⊜⫯980—TAXATION—PENDENCY OF CONDEMNATION PROCEEDINGS.

The pendency of condemnation proceedings on the part of the city of New York against the land assessed was no defense to a proceeding under Greater New York Charter (Laws 1901, c. 466) § 1035, added by Laws 1908, c. 490, to foreclose a transferred tax lien on such land.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2124–2133; Dec. Dig. ⊜⫯980.]

8. MUNICIPAL CORPORATIONS ⊜⫯980—TAXATION—FORECLOSURE OF TAX LIEN BY TRESPASSING CITY.

The fact that the city of New York, which was seeking under Greater New York Charter (Laws 1901, c. 466) § 1035, added by Laws 1908, c. 490, to foreclose a transferred tax lien on certain realty, had trespassed on such realty by permitting vessels to lie alongside it, was no defense to the foreclosure.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2124–2133; Dec. Dig. ⊜⫯980.]

9. MUNICIPAL CORPORATIONS ⊜⫯980—TAXATION—TAX LIEN COVERING SEVERAL ASSESSMENTS—INVALIDITY OF ONE OR MORE—EFFECT.

In proceedings by the city of New York, under Greater New York Charter (Laws 1901, c. 466), § 1035, added by Laws 1908, c. 490, to foreclose a transferred tax lien, the fact that such lien covered taxes from 1872 to 1907 and an assessment for a local improvement, while the plaintiff waived any claim to recovery on the taxes prior to 1894, which

---

⊜⫯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the defendants treated as an admission of the invalidity of such taxes, was not a defense to the foreclosure of the lien, since the invalidity of one or more of a number of assessments which a tax lien covers, does not invalidate such lien.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2124–2133; Dec. Dig. ☞980.]

Appeal from Special Term, New York County.

Action by the City of New York against Edgar S. Appleby and another, individually and as executors of Charles E. Appleby, deceased, impleaded with another. From a judgment dismissing the complaint upon the merits, plaintiff appeals. Reversed, and judgment entered for the plaintiff.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Curtis A. Peters, of New York City, for appellant.
Banton Moore, of New York City, for respondents.

SCOTT, J. The action is one to foreclose a tax lien under section 1035 of the Greater New York Charter, which was added thereto by chapter 490, Laws of 1908, and amended by chapter 65, Laws 1911. The complaint alleges that on the 12th day of May, 1910, the collector of assessments and arrears of the city of New York executed and delivered to the plaintiff a transfer of tax lien upon, against, or affecting real property in the borough of Manhattan, city of New York, in said transfer of tax lien designated as lot 17, block 665, section 3, in the borough of Manhattan, reference being thereby intended to be made to the tax map of the city of New York for said borough. Then follows a detailed description by metes and bounds of said lot, showing it to lie west of the westerly line of Twelfth avenue and between West Thirty-Ninth street and West Fortieth street, containing 363 feet along its southerly boundary and 379 feet 2 inches along its northerly boundary, and in breadth 198 feet 2 inches on its westerly line, and 197 feet 6 inches on its easterly line. The amount of the tax lien assigned is said to be $50,580,20, with interest from the 12th day of May, 1910, at 12 per cent. per annum, payable semiannually on the 1st days of January and July in each year. It is further alleged that defendants have failed to pay the interest which became due and payable on the 1st day of January, 1911, that such default in the payment of interest has continued for more than 30 days, and that plaintiff has elected and does elect that the aggregate amount of such tax lien be immediately due and payable. It is also alleged that no part of said tax lien or interest has been paid, and that no proceedings have been had at law or otherwise for the recovery of the amount secured by said transfer tax lien or any part thereof. The defendants Appleby, who claim to own the property affected (the Metropolitan Insurance Company apparently having no claim thereto or interest therein), by their answer deny all the allegations of the complaint, except that plaintiff is a domestic municipal corporation, and they set up a large number of defenses and objections to the plaintiff's recovery, which are in the main of a technical character, and

which need not be recited here, but will be considered, so far as they appear to require consideration, hereafter.

The cause was partially heard at Special Term, and then by consent of the parties was referred to a referee to take the proofs and to report back to the court with his opinion. This he did, and in due course rendered an opinion sustaining many of the defendants' objections and advising a dismissal of the complaint. Upon the coming in of the report the court made formal findings, which in the main supported the opinion of the referee, and thereupon not only dismissed the complaint upon the merits, but declared the transfer of tax lien and a large proportion of the taxes involved thereunder to be invalid, null, and void, and decreed their cancellation.

Chapter 490 of the Laws of 1908, amending the Greater New York Charter, prescribed a method of enforcing the payment of taxes upon real estate in the city of New York which, at least so far as concerns that city, was entirely novel. Starting with the assumption, as has always been the rule, that taxes, assessments, and water rates assessed upon real estate constituted a lien thereon, the scheme of the act was that, instead of attempting to sell the property itself, or a lease thereof, when such taxes, assessments, or water rents remain unpaid, the city should sell at public auction, through the collector of assessments and arrears, the right of the city to receive such taxes, assessments, or water rents, and the lien therefor. This right and lien is denominated the "tax lien," and the transfer thereof a "transfer of tax lien." Due provision is made as to the length of time which must elapse before such a sale can be made, and of the notice to be given of any such sale. Such tax liens are to bear interest at the rate bidden by the purchaser, not exceeding 12 per cent. per annum, and if no bid is received from any other person the collector of assessments and arrears is authorized to bid in the tax lien on behalf of the city of New York, whereupon a transfer of tax lien is to be made to the city, who shall have the same rights to and under it as if it had been bought by any other person. The aggregate amount of each tax lien transferred is to become due and payable three years from the date of the sale, and until then the holder shall be entitled to receive interest on such aggregate amount semiannually on the 1st days of January and July, with an option to the holder of said tax lien that the aggregate amount thereof shall become due and payable after default in the payment of interest for 30 days, or after default for 6 months in the payment of any taxes, assessments, or water rents which became a lien after the day mentioned in the transfer of tax lien as the date of the tax lien transferred.

Such a tax lien may be foreclosed when the amount thereof becomes due and payable, as provided by the act, by an action which is assimilated so far as concerns its procedure to an action to foreclose a mortgage on real property. It is provided by section 1036 that in such an action the production of the transfer of tax lien executed as prescribed by the act—

"shall be presumptive evidence that the lien purporting to be transferred by such an instrument was a valid and enforceable lien, and that it has been duly assigned to the purchaser, and it shall not be necessary to plead or prove any

act, proceeding, notice or action, preceding the delivery of such transfer of tax lien, nor to establish the validity of the tax lien transferred by such transfer of tax lien. If a party or person in interest in any such action or proceeding claims that a tax lien is irregular or invalid, or that there is any defect therein or that a transfer of tax lien is irregular, invalid or defective, such invalidity, irregularity or defect must be specifically pleaded or set forth, and must be established affirmatively by the party or person pleading or setting forth the same."

At the opening of the trial before the court the plaintiff put in evidence the transfer of tax lien, and made formal proof of the amount of interest due and nonpayment. Then followed the order of reference above referred to. Before the referee a considerable amount of evidence, principally documentary, was offered by defendants in support of the objections contained in their answer, and some evidence was introduced by the plaintiff. The referee sustained a number of the objections urged, on technical grounds, by the defendants. Many of these we are not called upon at this time to consider for the following reason: It appeared from the transfer of tax lien that the collector had transferred to plaintiff the right to receive and the lien of taxes on the property affected from the years 1872 to 1907, inclusive, and the right to receive and the lien of an assessment for a local improvement confirmed on May 19, 1908. Some of the objections found by the referee, and by the court, to the validity of the tax lien sought to be foreclosed, are applicable only to the taxes levied upon the property prior to 1894, and to the assessment for the local improvement. Upon the trial the plaintiff stipulated that "for the purposes of this action" it "waives claim to recover upon all items set forth in the transfer of tax lien" preceding the taxes of 1894, and also "waives claim to recover upon the item set forth in said transfer" as the assessment for local improvement. With these items out of consideration, it would serve no useful purpose to discuss the objections which apply solely to them.

[1] Before proceeding to consider the remaining objections urged by defendant and sustained by the referee and the court, it will not be amiss to refer to a very recent decision of the Court of Appeals which states with great clarity the distinction between those defects and irregularities in procedure which are, and those which are not, fatal to the validity of a tax or of proceedings taken to enforce its payment. In Lancaster Sea Beach Improvement Co. v. City of New York, 214 N. Y. 1, 108 N. E. 90, the court had before it the validity of a tax levied upon real property within the city. There, as here, many technical defects and omissions on the part of the officers of the city were relied upon to invalidate the tax. In disposing of them the court used this language:

"The power to assess property for the purpose of taxation and to levy taxes is strictly statutory. A substantial compliance with those statutory provisions, defining and regulating the exercise of it, which are of the substance of the procedure and are designed for the protection of the taxpayer and the preservation of his rights, is a condition precedent to the validity of the tax. Those provisions, * * * however, which are intended to instruct and guide the assessing officers and secure regularity and uniformity of procedure, * * * are directory and not mandatory, unless accompanied by negative or restrictive words importing that the acts prescribed shall not be done in any other manner or time than that designated. The failure to comply strictly with a directory provision does not render the assessment or tax invalid."

The same rule, of course, is applicable to a proceeding to sell and transfer a tax lien. Tested by this plain and reasonable rule, few of the objections, if any, found by the referee and the court to attach to plaintiff's tax lien, will be found to be substantial.

[2] Section 1030 of the charter, added by chapter 490, Laws of 1908, provides, among other things, that the transfer of tax lien shall contain—

"a description of the real property affected by the tax lien, which description shall include the name of the borough in which the property lies and shall refer for certainty to the designation of said lot on the tax map, by its lot number and the number of the block, ward or section in which it is contained."

In the transfer of tax lien to foreclose which this action is brought the property affected is described as consisting of "lot 17, block 665, section 3, in the borough of Manhattan." It is not stated, however, that the lot, block, and section referred to had reference to the tax map, and this omission was deemed fatal to the validity of the transfer of tax lien to plaintiff. We do not so consider it. The description complied literally with the requirements of the section just quoted from, by giving accurately the specified particulars. The omission to designate the map upon which the blocks, wards, or sections were shown was not a matter which in any way affected the right of the owner, and could always be supplied by proof.

[3-5] The objection that the amount of the tax is set down in the assessment roll in the sixth column, instead of the fifth, is expressly met and overruled by the Lancaster Sea Beach Imp. Co. Case, supra. The property involved is wholly land under water, the ownership of which carries with it the right, under certain circumstances, to fill in and erect a bulkhead along the established bulkhead line. It is said that neither the defendants Appleby nor their predecessors in title have ever exercised this right, and yet, for certain years, the annual record of assessed valuations contained certain words of abbreviation indicating that the bulkhead existed on the property assessed, whence it is inferred that the valuation was fixed at a higher sum than it would have been if the fact that there was no bulkhead had been taken into account. It is also urged, although not very clearly proven, that property not belonging to the defendants was included in the land assessed and taxed. In either case the law affords to the taxpayer other means of redress, whether by certiorari to review the assessment or by apportionment of the tax, and these remedies are exclusive. Having failed to avail himself of them, the taxpayer cannot raise the question in this proceeding.

[6] It was held by the referee (but in this regard the court disagreed with him) that the sale of the tax lien was invalid, because not advertised in certain corporation newspapers. Section 1027 of the charter, added by the act of 1908, provides as follows:

"But the tax lien on houses or lots, or improved or unimproved lands, in the city of New York, shall not be hereafter sold at public auction for * * * non-payment of any tax, assessment, or water rents which may be due thereon, unless notice of such sale shall have been published once in each week successively for three months in the City Record and the corporation newspapers."

From the evidence in this action it appears that the corporation newspapers of the city of New York are, and were at the time of the sale of the tax lien in suit, the City Record, the Brooklyn Daily Eagle, the Brooklyn Daily Times, the Brooklyn Citizen, the Brooklyn Standard Union, the Brooklyner Freie Presse, and the Brooklyner Zeitung. It appears, also, that the notice of the sale at which the tax lien covering the defendant's property was sold was published in the City Record weekly for three months, beginning March 4, 1909, and·in no other newspaper. The defendants insist, and the referee has held, that this was a clear violation of the law, which invalidated the sale. It is also provided by section 1526 of the charter that:

"And said City Record, and the newspapers now by law designated as corporation newspapers in the present city of Brooklyn, * * * shall be the only papers to be included within the term 'corporation newspapers' as the same is used anywhere in this act; *but no notice or advertisement shall be inserted in any of said newspapers now by law designated as corporation newspapers in said city of Brooklyn,* * * * *except such as respect matters* * * * *occurring within or relating to the borough of Brooklyn exclusively.*"

Following the well-established rule that all parts of a statute are to be read together, to the end that due and reasonable interpretation may be given to each provision, it seems quite clear that the limitation contained in section 1526 as to the matters to be advertised in the corporation newspapers, whereby such advertisements are confined to "matters occurring within or relating to the borough of Brooklyn exclusively," applies as well to the advertisement of the sale of tax liens as to any other matters required to be advertised. Common sense, as well as the recognized canons of statutory construction, seems to call imperatively for this construction of the statute. The referee's reasoning upon this point is quite unconvincing, and, as we consider, finds no support in the case upon which he relies. Francis v. City of Troy, 74 N. Y. 338.

[7, 8] It appears that in 1894 the city of New York instituted proceedings to acquire by condemnation the lands covered by the tax lien now sought to be foreclosed. Commissioners were appointed and held one meeting, but nothing further was ever done, and the proceeding has in effect been abandoned. The defendants raise the novel objection that no tax could lawfully be imposed upon the property during the pendency of such proceedings. We are aware of no authority for this proposition, which is manifestly unsound. It is also contended that for many years the city has trespassed upon the property by permitting vessels to lie alongside the piers constructed and owned by the city at the foot, and as continuations of Thirty-Ninth and Fortieth streets. This claim has recently been considered in a case which passed through this court. Appleby v. City of New York, 152 N. Y. Supp. 357. Whether or not the city has been guilty of trespass, as claimed by defendants, is entirely immaterial in the present case, for the property would still be liable to taxation, even if trespassed upon.

[9] It remains to consider a single objection, not considered by the referee or the court below, because its consideration was rendered

unnecessary, in view of the decision arrived at. As has already been said, the tax lien transferred to plaintiff covered taxes from 1872 to 1907, and an assessment for a local improvement. Plaintiff, on the trial, waived any claim to recovery in this action upon the taxes prior to 1894, or upon the assessment. Defendants, treating the waiver as an admission of the invalidity of the taxes and assessment upon which a recovery was waived, as very evidently it was not, insist that plaintiff may not recover upon any of the taxes the lien of which was transferred. They rely upon certain cases, arising under quite different statutes, where the land itself was sold for nonpayment of taxes, and in which it has been held that, if land was sold for taxes, some valid and some invalid, the sale could not be sustained. See People v. Hagadorn, 104 N. Y. 516, 10 N. E. 891. These cases have no relevancy to the present. The city of New York did not attempt to sell defendants' land. It simply conveyed to plaintiff, under legislative sanction, its lien or successive liens upon the land for unpaid taxes, leaving these liens to be foreclosed in the manner provided by statute. No one would contend for a moment, in a case where taxes are left unpaid for a number of years, and some prove to have been validly levied and some not, that the defects of the invalid taxes vitiate the valid ones, or that there is no lien for the valid taxes because none could be enforced for the invalid ones. The transfer of tax lien to plaintiff, although contained in a single paper, was in reality a transfer of a large number of liens for successive years. If some of those liens were valid and enforceable, and some, as we may assume for the sake of the argument, invalid and unenforceable, there will be no injustice done to defendants, and no rule of law or equity will be violated if plaintiff has judgment for the foreclosure of the valid liens. The case will be precisely the same as it would be if a separate transfer of tax lien had been executed for each year as to which taxes remained unpaid and the complaint had stated a separate cause of action as to each transfer.

We have now considered all of the objections which seem to require specific consideration, with the result that we find no valid and substantial objection to the foreclosure of the lien for the taxes of those years as to which plaintiff has not waived the right to recover in this action.

The result is that the judgment appealed from must be reversed, and judgment entered in favor of the plaintiff, with costs in this court and in the court below. The findings to be reversed and new findings to be made will be determined upon the settlement of the order to be entered herein. All concur.